[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14276
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cr-60109-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YVENS-SON DUDLEY JEUDY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 26, 2019)

Before MARCUS, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Yvens-Son Jeudy appeals his conviction for knowingly making a false

statement on a form required to be kept in the records of a licensed firearms dealer,

in violation of 18 U.S.C. § 924(a)(1)(A).  On appeal, Jeudy argues that the evidence presented at trial was insufficient to convict him.  After careful review, we affirm.

We review a challenge to the sufficiency of the evidence de novo to "determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  United States v. Mercer, 541 F.3d 1070, 1074 (11th Cir. 2008) (per curiam).  The evidence is viewed in the light most favorable to the government, and all reasonable inferences and credibility determinations are drawn in favor of the verdict.  United States v. Simpson, 228 F.3d 1294, 1299 (11th Cir. 2000).  "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence."  United States v. Chastain, 198 F.3d 1338, 1351 (11th Cir. 1999).  We may not review jury determinations of witness credibility unless the testimony is "incredible as a matter of law."  United States v. Hewitt, 663 F.2d 1381, 1386 (11th Cir. 1981).  We make "no distinction . . . between the weight given to either direct or circumstantial evidence," but "[w]here the [G]overnment relies on circumstantial evidence, reasonable inferences, and not mere speculation, must support the jury's verdict."  United States v. Isnadin, 742 F.3d 1278, 1303 (11th Cir. 2014) (quotations omitted) (alterations in original).

In order to convict a defendant for violating 18 U.S.C. § 924(a)(1)(A), the government must prove that (1) the defendant knowingly made a false statement (2) with respect to information that a licensed dealer is required by law to keep in his

records.   Here, Jeudy only challenges the sufficiency of the evidence as to the "knowing" aspect of the first element -- that he knowingly made a false statement.

As the record reflects, Jeudy was charged with a violation of § 924(a)(1)(A) for answering "no," at a September 17, 2017 gun show, in response to question 11.b. on Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Form 4473, which asks purchasers of firearms if they are "under indictment or information in any court for a felony, or any other crime for which the judge could imprison [them] for more than [1] year?"  At trial for the instant offense (the "§ 924(a)(1)(A) trial"), Jeudy confirmed that he checked "no" in response to question 11.b. at the gun show, and stipulated that, at the time of the gun show, he was under information for a state felony for which he could be imprisoned for more than 1 year.  The evidence at his § 924(a)(1)(A) trial further revealed that multiple court hearings were scheduled for the state felony case before the September 17, 2017 gun show, which suggested that Jeudy was at least aware at the time that he was under information for a felony. Jeudy conceded at the § 924(a)(1)(A) trial that he had read each question on ATF Form 4473, was proficient in the English language, graduated high school, and attended college.

As for Jeudy's testimony at the § 924(a)(1)(A) that he did not think question 11.b. applied to him because he "was offered a PTI program," a pretrial intervention ("PTI") program for first-time offenders, after which the charges against him would

3

be dropped and he knew he would not go to jail for more than 1 year, it was inconsistent with other parts of his testimony. For instance, Jeudy testified that he was not sure how he knew he qualified for the PTI program; and after initially testifying that the judge offered him the PTI program, Jeudy subsequently testified that he was not sure who offered it, but his attorney told him that was "what was going to happen." Jeudy also confirmed that his state felony case was still pending as of September 17, 2017, nothing was final until the judge sentenced him, and the judge had not yet sentenced him. Jeudy added that he thought the worst thing that could happen to him by answering "no" to question 11.b. was being told "no."

In short, based on Jeudy's trial testimony, it was reasonable for the jury to infer that Jeudy knew at the time he filled out question 11.b. that he was under information for a state felony for which he <u>could</u> be imprisoned for more than 1 year, that he was not certain how his state case would be resolved, and that he may have had good reason for believing that it was in his best interest for answering question 11.b. untruthfully: he would not have been able to purchase guns if he answered "yes," and he did not think that there would be any consequences for answering "no." Viewing the evidence in the light most favorable to the government, as we must, we conclude that a reasonable jury could have found that Jeudy knowingly made a false statement when answering question 11.b. on ATF Form 4473 and was,

4

therefore, guilty of Count One beyond a reasonable doubt.  See Mercer, 541 F.3d at 1074; Simpson, 228 F.3d at 1299.  Therefore, we affirm.

**AFFIRMED**.